IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 13-00511 JMS (01) |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 192 |
| vs. | |
| ERNESTO HERNANDEZ, | |
| Defendant. | |

## ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 192

### I. INTRODUCTION

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Defendant Ernesto Hernandez ("Defendant") moves for immediate release from Federal Correctional Institute Talladega ("FCI Talladega"). ECF No. 192. The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release and, even if he had, the court would deny the Motion after a consideration of the 18 U.S.C. § 3553(a) factors. Thus, for the following reasons, the Defendant's Motion for Compassionate Release is DENIED.

///

///

///

## II.  BACKGROUND

Defendant, currently 59 years old, is incarcerated at FCI Talladega

with a projected release date of May 28, 2026.  *See* https://www.bop.gov/

inmateloc/ (select "Find By Number" and enter Register Number 15666-022) (last

visited February 11, 2022).

On January 10, 2014, Defendant was found guilty by a jury of two

counts of a Superseding Indictment: (1) conspiracy to distribute and possess with

intent to distribute 50 grams or more of a mixture and substance containing a

detectable amount of methamphetamine; and (2) possession with intent to

distribute 0.93 grams of methamphetamine.  ECF No. 113 (Verdict Form); ECF

No. 95 (Superseding Indictment).  On April 28, 2014, Defendant was sentenced to

concurrent 180-month terms of incarceration and concurrent five-year terms of

supervised release.  ECF Nos. 127, 128.  The Ninth Circuit affirmed Defendant's

conviction and sentence on July 16, 2015, *United States v. Hernandez*, 618 F.

App'x 319, 321 (9th Cir. 2015) (mem.).  *See also* ECF Nos. 144, 146.

On May 21, 2020, Defendant filed an "Emergency Motion to Reduce

Sentence Under First Step Act (Compassionate Release)," based on preexisting

medical conditions and the COVID-19 pandemic.  ECF No. 168.  The court denied

that motion on June 24, 2020, ECF No. 179, and the Ninth Circuit affirmed on

August 6, 2021, *United States v. Hernandez*, 855 F. App'x 424 (9th Cir. 2021)

(mem.).  *See also* ECF No. 188.

On August 31, 2021, Defendant submitted a request for

compassionate release to FCI Talladega's warden.  *See* ECF No. 192-1 at PageID

## 1465-69.  Having not received a response, on December 27, 2021, Defendant

filed the instant Motion.[1]  ECF No. 192.  The Government filed its Opposition on

January 18, 2022.  ECF No. 198.  The court decides the Motion without a hearing

pursuant to Local Rule 7.1(c).

## III.  DISCUSSION

### A.      Legal Standard

Defendant moves for compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as

relevant:

> [T]he court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the
> defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse of 30 days
> from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the

---

[1] A motion is deemed filed on the date an incarcerated defendant gave it to prison officials for mailing to the court.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (explaining prison mailbox rule); *Douglas v. Noelle*, 567 F.3d 1103, 1108-09 (9th Cir. 2009).  But here, the Motion is undated and does not contain a legible postmark; the court thus assumes for purposes of this Order that the Motion was filed on December 27, 2021—the date the court received it. *See* ECF No. 192 at PageID ## 1448, 1463 (no date); ECF No. 192-5 at PageID # 1479 (mailing envelope).

> term of imprisonment . . . after considering the factors set
> forth in [18 U.S.C.] section 3553(a) to the extent that
> they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant
> such a reduction;
> . . . .
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

Thus, the court may reduce Defendant's sentence if (1) Defendant has

exhausted the required administrative remedies; (2) the court determines, after

consideration of the applicable section 3553(a) factors, that Defendant has shown

that "extraordinary and compelling reasons" warrant the reduction; and (3) the

reduction is consistent with any applicable Sentencing Commission policy

statements.  Here, the parties agree that Defendant has exhausted his administrative

remedies.  ECF No. 192 at PageID # 1449; ECF No. 198 at PageID ## 1526-27.

The United States Sentencing Commission's policy statement, United

States Sentencing Guideline ("Guideline") § 1B1.13, was promulgated before the

First Step Act provided defendants with the ability to file motions for

compassionate release on their own behalf (and, without a quorum, the Sentencing

Commission has been unable to amend the Guidelines post-First Step Act).  The

Ninth Circuit has therefore determined that the Guidelines lack any policy

statement "applicable" to a defendant-filed motion for compassionate release.  *See*

*United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).  This court is thus

4

empowered to consider any extraordinary and compelling reason that warrants a sentence reduction.  In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."  *Id*.

## B.  Extraordinary and Compelling Reasons Do Not Warrant Release

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release.  *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020).  Here, Defendant argues that compassionate release is warranted because he suffers from several medical conditions that elevate his COVID-19 risk.  *See* ECF No. 192 at PageID # 1458. Defendant also claims that FCI Talladega does not provide a safe environment to protect against COVID-19.  *See id*. at PageID ## 1451-57.  These arguments are unavailing.

The COVID-19 pandemic alone does not constitute an extraordinary and compelling reason for release.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering [the Bureau of Prison's] statutory role, and its extensive and professional efforts to curtail the virus's spread.); *United States v. Drummondo-Farias*, 460 F. Supp. 3d 1008, 1014 (D.

5

Haw. 2020) (explaining that "'[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence'" (quoting *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020))).

Further, Defendant has not shown that the hardships he faces at FCI Talladega differ significantly from any other Bureau of Prisons ("BOP") facility. At present, BOP reports that nine inmates and twenty-six staff members at FCI Talladega[2] have "confirmed active cases" of COVID-19. *See* https:// www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited February 11, 2022). Although the court recognizes that COVID-19 cases could rise again at FCI Talladega, the institution is presently doing well. And as COVID-19 vaccinations continue to be administered, the threat of a COVID-19 outbreak will continue to decrease over time.[3]

Defendant argues that he suffers from asthma, hypertension, high cholesterol,[4] and obesity, and that each of these conditions elevates his risk relating

---

[2] FCI Talladega currently houses 869 inmates. *See* https://www.bop.gov/locations/ institutions/tdg (last visited February 11, 2022).

[3] As of February 11, 2022, FCI Talladega has completed full inoculations of 846 inmates and 167 staff members. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited February 11, 2022). And, as discussed further below, Defendant has been vaccinated against COVID-19. *See* ECF No. 198-2 at PageID # 1549.

[4] In his request to the warden, Defendant included his "high cholesterol" as a medical condition that elevates his COVID-19 risk. *See* ECF No. 192-1 at PageID # 1465. Although he
(continued. . . )

6

to COVID-19.  ECF No. 192 at PageID # 1458; ECF No. 192-1 at PageID # 1465.
The court addresses each condition in turn.

Heart conditions—including "possibly" hypertension (high blood
pressure)—"can make you more likely to get severely ill from COVID-19."
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
medical-conditions.html (last visited February 11, 2022).  Defendant appears to
have been diagnosed with—and is being treated for—hypertension.  *See* ECF No.
192-2 at PageID # 1473 (indicating that, on July 22, 2020, Defendant was
prescribed various medications for the apparent treatment of high blood pressure,
including Lisinopril and Hydrochlorothiazide); *see also* Mayo Clinic, Lisinopril
(Oral Route), https://www.mayoclinic.org/drugs-supplements/lisinopril-oral-
route/side-effects/drg-20069129?p=1 (last visited February 11, 2022) ("Lisinopril
is used . . . to treat high blood pressure (hypertension)."); Mayo Clinic,
Hydrochlorothiazide (Oral Route), https://www.mayoclinic.org/drugs-
supplements/hydrochlorothiazide-oral-route/description/drg-20071841 (last visited
February 11, 2022) ("Hydrochlorothiazide is used . . . to treat high blood pressure
(hypertension)."); *see also* ECF No. 179 at PageID # 1385.  For purposes of this

---

does not include high cholesterol (also known as hyperlipidemia) in his Motion, *see* ECF No.
192 at PageID # 1458, the court considers that condition as one among the several medical
conditions that Defendant argues elevates his risk should he contract COVID-19 again.  *See id.*
(stating his concern regarding COVID-19 relates to "an extreme risk of recontracting" the virus);
*see also* ECF No. 192-1 at PageID # 1465 ("I have previously contracted COVID-19[.]").

Order, the court assumes that this condition places him at increased risk should he contract COVID-19 again.[5]

      As for Defendant's asthma, the Centers for Disease Control and Prevention ("CDC") states that chronic lung diseases—including "moderate to severe" asthma—"can make you more likely to get severely ill from COVID-19," *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 11, 2022).  Although Defendant appears to have been diagnosed with—and is being treated for—asthma, it is not clear whether his condition is "moderate to severe."  *See* 192-2 at PageID # 1473 (indicating prescriptions in 2020 for the apparent treatment of asthma, including inhalers and "inhalation powder"); *see also* ECF No. 179 at PageID # 1385.  Regardless, the court assumes for purposes of this Order that Defendant is at increased risk based on his status as an asthmatic.

      As for Defendant's high cholesterol, or hyperlipidemia, the CDC does not list that condition as one that can make an adult of any age more likely to get severely ill from COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-

---

[5] Defendant has been vaccinated against COVID-19, *see* ECF No. 198-2 at PageID # 1549, and it appears that, at some unspecified date, he contracted—and recovered from—the virus.  *See* ECF No. 192-1 at PageID # 1465 ("I have previously contracted COVID-19 . . . ."); ECF No. 192 at PageID # 1458 ("[Defendant] has several medical conditions . . . that place[] him at an extreme risk of *recontracting* COVID-19." (emphasis added)); ECF No. 192-4 at PageID # 1478 (indicating that Defendant was in COVID-19 quarantine on March 17, 2021 and tested negative for COVID-19 on April 10, 2021).

ncov/need-extra-precautions/people-with-medical-conditions.html (last visited

February 11, 2022).  Thus, the court does not consider high cholesterol

(hyperlipidemia) as a condition that elevates Defendant's COVID-19 risk.  Stated

differently, Defendant's hyperlipidemia does not constitute an "extraordinary and

compelling reason" justifying release.  *See, e.g.*, *United States v. Thompson*, 984

F.3d 431, 434-35 (5th Cir. 2021) (reasoning that "[t]he courts that granted

compassionate release [on the basis of health conditions] largely have done so for

defendants who had already served the lion's share of their sentences and

presented multiple, severe, health concerns" and not solely on the basis of

"commonplace" conditions such as hypertension and hyperlipidemia).

And although it is unclear whether Defendant is obese, *see* ECF No.

1458 (claiming "obesity" as one of Defendant's medical conditions),[6] being

overweight or obese places an individual at an increased risk of severe illness

should he contract COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/people-with-medical-conditions.html (last visited

---

[6] At the time of sentencing in 2014, Defendant measured 5'5" tall and weighed 170 pounds.  Presentence Investigation Report ("PSR") ¶ 51, ECF No. 129 at PageID # 402.  At this height and weight, Defendant has a BMI of 28.3.  *Calculated using* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited February 11, 2022).  And according to the CDC, a BMI between 25-29.9 indicates an individual is "overweight."  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 11, 2022).

February 11, 2022).  For purposes of this order, the court considers Defendant at an

increased risk based on his BMI at the time of sentencing.

Defendant argues that compassionate release is justified due to "an

extreme risk of recontracting COVID-19" due to "FCI Talladega['s] . . . history of

poor medical treatment."  ECF No. 192 at PageID # 1458; *see also* ECF No. 192-1

at PageID # 1465 (stating that Defendant "previously contracted COVID-19" at an

unspecified date).  But Defendant appears to be receiving medical treatment while

incarcerated.  *See* ECF No. 192-2 at PageID # 1473 (Defendant's medical records

indicating various prescriptions issued in 2020 for diagnosed conditions); *see also*

*id*. at PageID ## 1471-72 (Defendant's medical records indicating treatment for

lower back pain in July 2014).  Further, he has not demonstrated that the medical

care he receives is any different from that experienced by other federally-

incarcerated individuals, nor is there any evidence in the record suggesting that he

is not receiving appropriate treatment for his medical conditions.  *See, e.g.*, *United*

*States v. DeMille*, 465 F. Supp. 3d 1144, 1149 (D. Or. 2020) ("Chronic conditions

that can be managed in prison are not a sufficient basis for compassionate release."

(citation omitted)).

And most significantly, Defendant's medical records indicate that he

has been vaccinated against COVID-19 while in BOP custody.  *See* ECF No. 198-2

at PageID # 1549 (showing that Defendant received two doses of the Pfizer-

BioNTech COVID-19 vaccine: one on June 10, 2021 and the other on July 1, 2021); *contra* ECF No. 192 at PageID # 1462 (stating, in his Motion, that "Defendant has not taken the [COVID-19] vaccine due to advise [sic] from his family doctor and also [because] . . . it goes against his Christian Orthadox [sic] Faith").[7]  As a result, Defendant's risk of symptomatic infection is greatly diminished.  *See, e.g.*, *United States v. Hayes*, 2021 WL 2533517, at *3 (D. Idaho June 21, 2021) ("Many courts have found that a vaccinated prisoner's risk of contracting COVID-19 does not rise to the level of an extraordinary and compelling reason, even in the presence of underlying health conditions."); *United States v. Del Rosario Martinez*, 524 F. Supp. 3d 1062, 1066 (S.D. Cal. 2021) ("Defendant's 'vaccination significantly mitigates the risk that [he] will contract COVID-19.'" (quoting *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021))).

Further, current CDC reports state that the risk of infection remains "much lower" in vaccinated individuals and that vaccination makes illness less severe.  *The Possibility of COVID-19 After Vaccination: Breakthrough Infections*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-

---

[7] Based on several inconsistencies in Defendant's Motion, including this statement that Defendant did not receive the COVID-19 vaccine, Defendant's Motion appears to be a canned, form motion that is not tailored to the specifics of Defendant's case.

effectiveness/breakthrough-cases.html (last visited February 11, 2022). As stated

by the CDC,

> Research shows that the FDA-authorized vaccines offer
> protection against severe disease, hospitalization, and
> death against currently circulating variants in the United
> States. However, some people who are fully vaccinated
> will get COVID-19. . . . [But] the risk of infection,
> hospitalization, and death are all much lower in
> vaccinated compared to unvaccinated people.

*Id*.

Here, Defendant's COVID-19 vaccination status substantially

mitigates the risks he faces. Given these facts, Defendant's claim that he is at risk

for severe illness from a breakthrough case is speculative. *See* ECF No. 192 at

PageID # 1458. This ground, standing alone, is a basis to deny his Motion for

Compassionate Release.

And finally, at 59 years old, Defendant is not in the age group at

highest risk, although he does face an elevated risk. As stated by the CDC:

> Older adults are more likely to get very sick from
> COVID-19. Getting very sick means that older adults
> with COVID-19 might need hospitalization, intensive
> care, or a ventilator to help them breathe, or they might
> even die. The risk increases for people in their 50s and
> increases in 60s, 70s, and 80s. People 85 and older are
> the most likely to get very sick.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-

adults.html (last visited February 11, 2022).

Taking into account Defendant's risk factors, that he is vaccinated against COVID-19, and his age, the court concludes that he has failed to demonstrate extraordinary and compelling reasons warranting compassionate release.

## C.        Section 3553(a) Factors

Even if extraordinary and compelling factors *did* warrant compassionate release—which, here, they do not—the court would also examine the applicable § 3553(a) factors.  But after careful review, the court determines that a consideration of those factors weighs heavily against Defendant's release.  *See, e.g.*, *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (stating that compassionate release is discretionary and may be refused after a consideration of the applicable § 3553(a) factors).

As relevant to this case, the § 3553(a) factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant";[8] and (2) "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide

_____

[8] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)-(2).  And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).  18 U.S.C. § 3553(a).

As to the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), Defendant's pretrial bail was revoked twice, *see* PSR, ECF No. 129 at PageID # 391 (indicating that after Defendant's May 8, 2013 arrest for the underlying offense, his bail was revoked twice, i.e., on May 24, 2013 and November 4, 2013).  And Defendant apparently lied about the circumstances leading to both bail revocations.  *See* PSR ¶¶ 21, 24, ECF No. 129 at PageID ## 396-97.  In fact, in one instance, Defendant made contact with a co-defendant and another individual, instructing them to "keep your mouths shut" because "the Feds are watching you and me."  PSR ¶ 24, *id*. at PageID # 397.

Further, at his trial for the underlying offense, Defendant lied under oath.  At sentencing, this court found that "the elements of perjury [were] met" and observed that it had "seldom heard a defendant lie as often and as much about such critical core parts of a case than [Defendant] did[, as] . . . [s]tatement after statement after statement out of [his] mouth was a lie."  Tr. at 13:6-12, 20, ECF

14

No. 141 at PageID # 955.  This court determined Defendant's perjury to be an "aggravating factor."  Tr. at 13:22, *id*.

And as for "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), Defendant received a 2-level upward adjustment for his aggravating role in the offense, PSR ¶ 34, ECF No. 129 at PageID ## 398-99 (applying a 2-level increase pursuant to Guideline § 3B1.1(c)).

Consideration of the § 3553(a)(2) factors also weighs against Defendant's release.  The court imposed "a substantial sentence" "to reflect the seriousness of the offense, promote respect for the law[,] and provide just punishment."  Tr. at 15:19-22, ECF No. 141 at PageID # 957.  It also determined that "a significant sentence is needed to afford adequate deterrence and to protect the public from further crimes of [Defendant]."  Tr. at 16:7-9, *id*. at PageID # 958.

To date, Defendant has served approximately 102 months, or 8.5 years, of his 180-month sentence.  *See* ECF No. 198-1 at PageID # 1546 (Sentence Monitoring Computation Data indicating that, as of December 28, 2021, Defendant has served 8 years, 4 months, and 13 days of his sentence).  And with a projected release date of May 28, 2026, he has more than four years of incarceration

remaining.  *See id.*; *see also* https://www.bop. gov/inmateloc/ (select "Find By Number" and enter Register Number 15666-022) (last visited February 11, 2022).[9]

Although Defendant has participated in BOP programming, *see, e.g.*, ECF No. 192-4 at PageID ## 1477-78, and has offered a release plan identifying post-incarceration residence with his wife on Oahu, *see* ECF No. 192-1 at PageID # 1469, or, alternatively, waiver of his deportation proceedings, *see id.* at PageID # 1465, compassionate release is not justified when weighed alongside the other § 3553(a) factors.

Considering all of the § 3553(a) factors, including the history and characteristics of Defendant, the offense conduct, and the time remaining on Defendant's sentence, reducing Defendant's sentence would severely undermine the goals of sentencing set forth in § 3553(a)(2).

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and even if he had, the court would deny the motion based on the relevant § 3553(a) factors.

---

[9] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release. *See, e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *Chambliss*, 948 F.3d at 694; *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653, 659 (E.D. Pa. 2020).

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate

Release, ECF No. 192, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 11, 2022.



         /s/ J. Michael Seabright

J. Michael Seabright
Chief United States District Judge

*United States v. Hernandez*, Cr. No. 13-00511 JMS (01), Order Denying Defendant's Motion for Compassionate Release, ECF No. 192

17